GAZIANO, J.
**804 This matter concerns the search of a warehouse, pursuant to a search warrant that was issued, in part, based on the odor of unburnt marijuana. Before the District Court judge had issued **805 a decision on the defendant's motion to suppress due to a lack of probable cause to issue the warrant, the parties requested that the judge *596 report a question to the Appeals Court, pursuant to Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004). The judge allowed the request and reported the question as the parties had phrased it. We transferred the appeal to this court on our own motion. We conclude that the warrant affidavit supported a finding of probable cause to search the commercial building for evidence of illegal marijuana cultivation.
1. Background. We recite the facts set forth in the warrant affidavit. On October 17, 2017, Amherst police officers Dominic Corsetti and Lindsay Carroll were on patrol in their police cruiser at approximately 6:30 P.M. They noticed two automobiles parked at one end of a windowless warehouse building, at the far end away from the driveway. No other vehicles were in the parking lot. The building was in a rural area with no nearby neighbors, surrounded by fields to the west and trees and brush to the north and east. Multiple active surveillance cameras were mounted on the exterior of the building. Deeming the placement of the vehicles to be suspicious, the officers undertook a check of the registrations. They learned that the owner of one vehicle, a Toyota Tundra pickup truck with a Massachusetts registration, had a number of convictions of possession of marijuana and possession of marijuana with intent to distribute, over a period of almost twenty years, beginning in the late 1990s.
The officers got out of their cruiser and walked around the building, along a narrow strip of grass that separated the building from the woods to the north and east. The approximately 11,000 square foot warehouse was primarily constructed of cinder blocks that measured eight inches by sixteen inches on their face and eight inches thick.[1] The warehouse's ordinary ventilation vents appeared to have been blocked by plywood from the interior of the building. At the same time, polymer (PVC) exhaust or ventilation pipes, extending through the cinder block walls, appeared to have been recently mortared into place.
Detective Gregory Wise of the Amherst police department arrived to assist in the investigation. Wise had received specialized **806 training in narcotics investigations, and he was familiar with methods utilized to cultivate and harvest marijuana. The officers established a perimeter around the warehouse. Wise observed that "[u]pon walking around the circumference of the building it should be noted that the overwhelming odor of unburnt fresh marijuana was present and appeared to be coming from the inside of the building." The officers also observed that a padlock on the door to a smaller, attached building had been broken, and there were pry marks on the door. The interior of that building held many empty bottles of a cleaning solvent.
The officers were able to contact the owner of the building, who was located in another State. He told the police that he had rented the building to the defendant. The owner's son arrived on scene and said that three or four individuals had been leasing the warehouse for the past year. The tenants paid approximately $4,000 per month; the son did not know the nature of their business.
The police checked the records of "the Medical Marijuana System" and determined that neither the defendant nor the registered owner of the Toyota had a medical *597 marijuana card or was authorized to grow marijuana pursuant to a hardship marijuana cultivation license. A check of the defendant's criminal record indicated that it contained six entries, including possession of marijuana in 2004, 1989, and 1988.
One of the officers noted a light coming from around the door of a garage that was attached to the other side of the warehouse and knocked on the door, but received no response. Looking through one of the cracks in the door panels, he saw another vehicle and an individual leaving the garage and entering the main warehouse.
Officers secured the area while another officer went to obtain a search warrant. Upon executing the warrant, police found, and seized, among other items, United States currency, equipment used to cultivate marijuana, and at least fifty pounds of marijuana. The defendant was placed under arrest for trafficking in fifty pounds or more of marijuana, in violation of G. L. c. 94C, § 32E(a ).
The defendant moved to suppress the evidence seized pursuant to the search warrant, on the ground of a lack of probable cause. He argued that, using only their sense of smell, the police were unable to exclude the possibility that the odor emanating from the windowless, 11,000 square foot, cinder-block warehouse was the product of legal marijuana use, possession, or cultivation.
After the defendant filed his motion to suppress in the District Court, and before a judge of that court had ruled on the motion, **807 the defendant and the Commonwealth jointly requested that the District Court judge report what both parties labeled a determinative question in the defendant's motion to suppress to the Appeals Court, pursuant to Mass. R. Crim. P. 34, and the judge did so. To facilitate this report, the parties stipulated to the facts set forth in certain paragraphs in the search warrant affidavit. The case was transferred to this court on our own motion.
2. Discussion. a. Reported question. The judge reported the following question:
"Does probable cause exist where an affidavit establishes the overwhelming odor of unburnt fresh marijuana emanating from an 11,000 square foot windowless commercial building with exhaust vents that appears to be covered in plywood where the reported leaseholder has a criminal history including [four] charges of possession of Class D between 1988 and 2004 and no active license to cultivate and the registered owner of a vehicle on the property has a criminal history including charges of possession with intent to distribute a Class D substance in 2015 and possession of a Class D substance in 1999 and 1998, and also had no active license to cultivate pursuant to Commonwealth v. Overmyer, 469 Mass. 16, 11 N.E.3d 1054 (2014), and its progeny."
As an initial matter, we observe that "[o]nly in the most exceptional circumstances will we review interlocutory rulings in criminal cases under our general superintendence powers." Gilday v. Commonwealth, 360 Mass. 170, 171, 274 N.E.2d 589 (1971).
"Interlocutory matters should be reported only where it appears that they present serious questions likely to be material in the ultimate decision, and that subsequent proceedings in the trial court will be substantially facilitated by so doing."
Commonwealth v. Henry's Drywall Co., 362 Mass. 552, 557, 289 N.E.2d 852 (1972), quoting *598 John Gilbert Jr. Co. v. C.M. Fauci Co., 309 Mass. 271, 273, 34 N.E.2d 685 (1941). Interlocutory reports are not to "be permitted to become additional causes of the delays in criminal trials which are already too prevalent." Commonwealth v. Vaden, 373 Mass. 397, 399, 367 N.E.2d 621 (1977). "An interlocutory appeal, like a report, may be appropriate when the alternatives are a prolonged, expensive, involved or unduly burdensome trial or a dismissal of the indictment." Commonwealth v. Cavanaugh, 366 Mass. 277, 279, 317 N.E.2d 480 (1974). **808 Here, however, what was reported was not a question of law that was a material part of the question that the motion judge was required to answer. The question that the parties asked the judge to report, and that the judge did report to this court, is a hypothetical question; it extracts some of the relevant facts set forth in the warrant affidavit. It is not the question that was before the magistrate who reviewed the entirety of the search warrant affidavit, nor the question that was before the motion judge considering the defendant's motion to suppress on the ground that the warrant affidavit did not establish probable cause. See Commonwealth v. Two Juveniles, 397 Mass. 261, 264-265, 491 N.E.2d 234 (1986) (noting "traditional and salutary practice of this court to decline to answer a constitutional question" "in the abstract," and declining to answer question reported under Mass. R. Crim. P. 34 before circumstances had been established by trial).
Moreover, the parties each attached to their briefs to this court, and ask this court to review, evidence that was not part of the search warrant affidavit that was before the magistrate. See Commonwealth v. O'Day, 440 Mass. 296, 608, 798 N.E.2d 275 (2003) ("our inquiry as to the sufficiency of the search warrant application always begins and ends with the 'four corners of the affidavit' " [citation omitted] ). As such, the question is not properly reported under Mass. R. Crim. P. 34 ("If, prior to trial, or, with the consent of the defendant, after conviction of the defendant, a question of law arises which the trial judge determines is so important or doubtful as to require the decision of the Appeals Court, the judge may report the case so far as necessary to present the question of law arising therein"). See E.B. Cypher, Criminal Practice and Procedure § 46:1 (4th ed. 2014). It is unclear on this record why the parties did not await the judge's decision and then proceed by filing applications for leave to pursue an interlocutory appeal pursuant to Mass. R. Crim. P. 15(a)(2), as appearing in 474 Mass. 1501 (2016), in the county court.
Reviewing the warrant affidavit de novo, as we would had the matter been before us on the allowance of an appeal pursuant to Mass. R. Crim. P. 15(a)(2),[2] we conclude that the warrant affidavit supported a finding of probable cause to search the commercial building for evidence of illegal marijuana cultivation.
**809 b. Standard of review. Under both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, a search warrant may issue only upon a showing of probable cause. Commonwealth v. Perkins, 478 Mass. 97, 102, 82 N.E.3d 1024 (2017). Probable cause means a "substantial basis" to conclude that "the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues."
*599 Commonwealth v. Alexis, 481 Mass. 91, 102, 112 N.E.3d 796 (2018), quoting Commonwealth v. Holley, 478 Mass. 508, 521, 87 N.E.3d 77 (2017). See Commonwealth v. Cinelli, 389 Mass. 197, 213, 449 N.E.2d 1207, cert. denied, 464 U.S. 860, 104 S.Ct. 186, 78 L.Ed.2d 165 (1983). "When considering the sufficiency of a search warrant application, our review 'begins and ends with the four corners of the affidavit.' " Holley, supra, quoting Commonwealth v. Dorelas, 473 Mass. 496, 500-501, 43 N.E.3d 306 (2016). The warrant affidavit is "considered as a whole and in a commonsense and realistic fashion" (citation omitted). Dorelas, supra at 501, 43 N.E.3d 306. In determining whether probable cause has been established, "[a]ll reasonable inferences which may be drawn from the information in the affidavit may also be considered." Commonwealth v. Donahue, 430 Mass. 710, 712, 723 N.E.2d 25 (2000).
"Probable cause is a 'fact-intensive inquiry, and must be resolved based on the particular facts of each case.' " Holley, 478 Mass. at 522, 87 N.E.3d 77, quoting Commonwealth v. Morin, 478 Mass. 415, 426, 85 N.E.3d 949 (2017). This makes a probable cause determination a particularly inapt issue to treat as a reported question. See Commonwealth v. Duncan, 467 Mass. 746, 753 n.7, 7 N.E.3d 469, cert. denied, 574 U.S. 891, 135 S.Ct. 224, 190 L.Ed.2d 170 (2014) ; Commonwealth v. Yacobian, 393 Mass. 1005, 1005-1006, 471 N.E.2d 1289 (1984).
c. Odor of marijuana and probable cause. The parties each appear to be arguing that, standing alone, the overwhelming odor of unburnt marijuana, coming from a particular type of commercial building, is a dispositive factor in a probable cause analysis. The Commonwealth appears to suggest that, coming from a warehouse of this size and construction, the odor of unburnt marijuana necessarily must be sufficient for a finding of probable cause. The defendant, on the other hand, appears to suggest that the overwhelming odor of unburnt marijuana, coming from a commercial warehouse of this size and construction, may never be considered as a factor in the probable cause analysis. Neither analysis is correct.
For more than one hundred years, possession of any amount of marijuana was a criminal offense in the Commonwealth. See **810 G. L. c. 94C, § 34 ; St. 1911, c. 372, § 1 ("An act relative to the issuance of search warrants for hypnotic drugs and the arrest of those present"). Accordingly, the "distinctive" odor of marijuana provided police with probable cause to believe that an illegal controlled substance was "nearby." Commonwealth v. Garden, 451 Mass. 43, 48, 883 N.E.2d 905 (2008). See, e.g., Commonwealth v. Lawrence L., 439 Mass. 817, 823-824, 792 N.E.2d 109 (2003) (strong odor of marijuana "reeking off" clothing of juvenile); Commonwealth v. Cohen, 359 Mass. 140, 145, 268 N.E.2d 357 (1971) (odor of burning marijuana coming from apartment); Commonwealth v. Correia, 66 Mass. App. Ct. 174, 177, 845 N.E.2d 1210 (2006) ("the perception by a police officer with training and experience in narcotics detection of a strong, fresh odor of burnt marijuana emerging from a motor vehicle provide[s] probable cause to search the vehicle" [citation omitted] ).
In December of 2008, as a result of a ballot initiative, "the offense of possessing one ounce or less of marijuana changed from being a criminal to a civil offense." Commonwealth v. Cruz, 459 Mass. 459, 470, 945 N.E.2d 899 (2011). The initiative, entitled, "An Act establishing a sensible State marihuana policy," was codified by the Legislature at G. L. c. 94C, §§ 32L - 32N. Id. at 464, 945 N.E.2d 899. Thereafter, the odor of marijuana is no longer de facto evidence of criminal activity under *600 Massachusetts law. Id. at 472, 945 N.E.2d 899. See Commonwealth v. Rodriguez, 472 Mass. 767, 778, 37 N.E.3d 611 (2015) (police not entitled to stop vehicle based on detecting odor of burnt marijuana); Commonwealth v. Craan, 469 Mass. 24, 33-34, 13 N.E.3d 569 (2014) (odor of marijuana emanating from vehicle does not provide probable cause to search for illegal quantity of marijuana); Overmyer, 469 Mass. at 21, 11 N.E.3d 1054 (odor of unburnt marijuana is not reliable predictor of "the presence of a criminal amount of [marijuana], that is, more than one ounce, as would be necessary to constitute probable cause").
The ability of the police to rely upon the odor of marijuana, burnt or unburnt, as evidence of criminal conduct was further diminished by the adoption of two subsequent initiative petitions. In November of 2012, Massachusetts voters approved "An Act for the humanitarian medical use of marijuana." St. 2012, c. 369. See Commonwealth v. Canning, 471 Mass. 341, 344, 28 N.E.3d 1156 (2015). The medical marijuana law, codified at G. L. c. 94I, §§ 1 - 7, provides that a qualifying patient shall not be subject to arrest for the possession of up to a sixty-day supply of marijuana necessary for the patient's personal medical use. Canning, supra at 346, 28 N.E.3d 1156. "[A] qualifying patient whose access to a licensed medical marijuana treatment center is limited by finances or an inability to travel to **811 a licensed center may obtain a 'hardship cultivation registration' that allows the patient ... to cultivate a sufficient number of marijuana plants to produce a sixty-day supply of marijuana." Id. See 935 Code Mass. Regs. §§ 501.015, 501.035 (2018). See also Commonwealth v. Richardson, 479 Mass. 344, 350-351, 94 N.E.3d 819 (2018) (medical marijuana patients entitled to pursue home hardship cultivation in limited circumstances).
Most significantly, in November of 2016, Massachusetts voters approved a ballot initiative that legalized the recreational possession and use of marijuana by persons at least twenty-one years of age, and allowed limited, regulated commercial sale. See St. 2016, c. 334. The act, codified in G. L. c. 94G, §§ 1 - 14, and entitled "Regulation of the Use and Distribution of Marijuana not Medically Prescribed," provides, in relevant part,
"a person [twenty-one] years of age or older shall not be arrested, prosecuted, [or] penalized ... under the laws of the commonwealth in any manner ... for: (1) possessing, using, purchasing, processing or manufacturing [one] ounce or less of marijuana, except that not more than [five] grams of marijuana may be in the form of marijuana concentrate; [or] (2) within the person's primary residence, possessing up to [ten] ounces of marijuana and any marijuana produced by marijuana plants cultivated on the premises and possessing, cultivating or processing not more than [six] marijuana plants for personal use so long as not more than [twelve] plants are cultivated on the premises at once."
G. L. c. 94G, § 7(a )(1), (2).
As a result of these changes to the Commonwealth's marijuana laws, to obtain a search warrant for an offense involving marijuana, the police are required to establish that they are investigating illegal marijuana possession or illegal marijuana cultivation, not merely the possession, consumption, or cultivation of marijuana. See Richardson, 479 Mass. at 350-351, 94 N.E.3d 819. This necessarily requires proof that the possession or cultivation of marijuana at issue is not sanctioned by State law. Id. Cf. State v. Crocker, 97 P.3d 93, 94-95, 96 (Alaska Ct. App. 2004) (warrant "must provide an affirmative reason to conclude that the possession is illegal or *601 that the marijuana otherwise constitutes evidence of a crime" in light of constitutional right to possess small amounts of marijuana in home); **812 State v. Castilleja, 345 Or. 255, 270, 192 P.3d 1283 (2008) (after legalization of marijuana in Oregon, issue is whether there was probable cause to believe that unlawful amount of marijuana -- more than six "usable" ounces -- would be found in residence).
Here, the District Court judge framed the question of probable cause in light of our holding in Overmyer, 469 Mass. at 17, 11 N.E.3d 1054. In that case, we considered whether the odor of unburnt marijuana "standing alone" provided probable cause to search an automobile. Id. The motion judge had concluded that a "very strong odor" of marijuana allowed the police to suspect that more than one ounce of marijuana was present inside a vehicle. Id. at 18-19, 11 N.E.3d 1054. We reversed the judge's denial of the motion to suppress. We stated that, "[a]lthough the odor of unburnt, rather than burnt, marijuana could be more consistent with the presence of larger quantities, ... it does not follow that such an odor reliably predicts the presence of a criminal amount of the substance, that is, more than one ounce, as would be necessary to constitute probable cause." Id. at 21, 11 N.E.3d 1054. We noted also that the characterization of odors as "strong" or "very strong" is inherently subjective, and "depend[s] on a range of other factors, such as ambient temperature, the presence of other fragrant substances, and the pungency of the specific strain of marijuana present," and, thus, is "a dubious means for reliably detecting the presence of a criminal amount of marijuana." Id. at 22, 11 N.E.3d 1054. We held that "we are not confident ... that a human nose can discern reliably the presence of a criminal amount of marijuana, as distinct from an amount subject only to a civil fine. In the absence of reliability, 'a neutral magistrate would not issue a search warrant, and therefore a warrantless search is not justified based solely on the smell of marijuana,' whether burnt or unburnt" (citation omitted). Id. at 23, 11 N.E.3d 1054.
Following that decision, our appellate courts consistently have held that the odor of marijuana, burnt or unburnt, without more, is insufficient to establish probable cause that a crime is being committed. See, e.g., Commonwealth v. Ilya I., 470 Mass. 625, 633, 24 N.E.3d 1048 (2015), quoting Commonwealth v. Fontaine, 84 Mass. App. Ct. 699, 706, 3 N.E.3d 82 (2014) ("odor of unburnt marijuana ..., standing alone, does not provide ... probable cause to conduct a search"); Commonwealth v. Locke, 89 Mass. App. Ct. 497, 498, 500, 503-505, 51 N.E.3d 484 (2016), quoting Rodriguez, 472 Mass. at 774, 37 N.E.3d 611 (suppressing 159 pounds of marijuana found in back of minivan, where trooper approaching van's window "immediately detected the **813 odor of unburned marijuana" that was "so strong that three air fresheners and an aerosol spray did not cover [it]," because "we no longer consider the 'strong' or 'very strong' smell of unburnt marijuana to provide probable cause to believe that a criminal amount of the drug is present").
The defendant contends that, because we held in Overmyer and its progeny that the odor of unburnt marijuana, alone, does not establish probable cause, the same result must be reached in this case. The defendant is correct that we concluded in Overmyer, 469 Mass. at 22-23, 11 N.E.3d 1054, that a police officer's sense of smell is an unreliable means to distinguish between a legal and an illegal amount of marijuana stashed in an automobile. Id. at 22-23, 11 N.E.3d 1054. In that case, however, we did not articulate a bright-line rule excluding the odor of unburnt marijuana *602 as one factor in the probable cause calculus in all circumstances. Probable cause, after all, is a "fact-intensive inquiry and must be resolved based on the particular facts of each case." Morin, 478 Mass. at 426, 85 N.E.3d 949. See Ornelas v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (probable cause is "fluid concept[ ]" dependent upon context in which it is being assessed). Cf. Zullo v. State, 2019 VT 1, ¶ 81, 205 A.3d 466, citing Overmyer, 469 Mass. 16, 11 N.E.3d 1054 (odor of marijuana is factor, "but not necessarily a determinative factor, as to whether probable cause exists"; agreeing with "courts that treat odor of marijuana as factor in totality-of-circumstances test rather than those courts concluding that odor of marijuana alone can provide probable cause to believe that marijuana is nearby"; "[t]he weight of that factor in determining whether probable cause exists generally depends not only upon the nature and strength of the odor and other factors accompanying the odor, but also how those factors relate to the offense being investigated").
Here, the circumstances before the magistrate formed a complete picture of which the overwhelming smell of unburnt marijuana was one factor. We conclude that the affidavit was sufficient to allow a magistrate to find probable cause to search the warehouse for evidence of illegal marijuana cultivation.
First, the police were searching for evidence of marijuana cultivation in a place where it was not allowed under State law. The lease holder, and at least one of the other suspected occupants, did not have medical marijuana hardship cultivation licenses, and cultivation as a registered commercial provider had **814 not yet been implemented under the 2016 voter initiative. See G. L. c. 94G, §§ 1 - 14. General Laws c. 94G, § 7(a )(2), allows a person twenty-one years of age or older to cultivate not more than six marijuana plants for personal use "within the person's primary residence," and the commercial warehouse clearly was not a residence. Thus, the search warrant affidavit excluded the possibility of legal marijuana cultivation, while the collection of empty chemical bottles, the newly mortared PVC exhaust pipes, and the plywood-boarded ordinary vents suggested a cultivation operation. Multiple active surveillance cameras were mounted on the exterior of the building. In addition, police had evidence of an apparent break-in, with lights emanating around the edges of a closed garage door, and two isolated vehicles parked in what the officers viewed as a suspicious manner, after ordinary business hours, one of which was owned by an automobile dealership in a distant State, and the other of which was owned by an individual who had prior convictions of possession and possession with intent to distribute marijuana over the course of several decades.
Of course, a prior conviction of a related offense does not establish probable cause that an individual is committing a similar offense. See Commonwealth v. Cordero, 477 Mass. 237, 246, 74 N.E.3d 1282 (2017) ("While Massachusetts courts have commented that knowledge of a person's arrest record ... [may] be considered in a reasonable suspicion evaluation ..., further evidence is required to support reasonable suspicion" [quotation and citation omitted] ); Commonwealth v. Kennedy, 426 Mass. 703, 709, 690 N.E.2d 436 (1998) ("We have often recognized that a police officer's knowledge of the reputation for drug use or drug dealing of persons interacting with a defendant, even though not sufficient alone, is a factor to support probable cause to arrest the defendant"). Nonetheless, a prior related conviction may be a factor in the over-all analysis. Cf.
*603 Commonwealth v. Carrasco, 405 Mass. 316, 322, 540 N.E.2d 173 (1989) ; Commonwealth v. Sanders, 90 Mass. App. Ct. 660, 666, 63 N.E.3d 54 (2016). In these circumstances, the multiple convictions related to marijuana possession and distribution, over a lengthy period, combined with the other evidence, added an additional measure of support to the officers' probable cause calculus.
The situation here is similar to that in Canning, 471 Mass. at 343-344, 28 N.E.3d 1156. In that case, we held that the search warrant affidavit established probable cause that there was cultivation, but not illegal cultivation, because no license or registration check was **815 done. Police observed that "[the] windows of the addition to the house on the property were obscured by dark material, ... an aluminum flexible hose [was] protruding out of one of the windows, and ... a pickup truck registered to the defendant [was] in front of the house." Id. at 343, 28 N.E.3d 1156. Officers continued surveillance and "smelled a strong odor of 'freshly cultivated' marijuana emanating from the house." Id. In addition to the "aluminum hose coming out of the window of the addition," police "heard the sound of fans, and, using night vision goggles, saw light emanating from another window." Id. [3]
The overwhelming odor of unburnt marijuana wafting from an 11,000 square foot, windowless, cinder-block warehouse, with all its doors apparently shut, its ventilation system blocked, and new exhaust pipes installed, is a different situation from the odor of unburnt marijuana emanating from the close confines of an automobile, or the front porch of a house. This is not to say, as the Commonwealth appears to suggest, that any odor of unburnt marijuana emanating from a building other than a house, by itself, provides probable cause. "[T]he 'strong' or 'very strong' smell of unburnt marijuana" is insufficient "to provide probable cause to believe that a criminal amount of the drug is present." Rodriguez, 472 Mass. at 774, 37 N.E.3d 611, citing Overmyer, 469 Mass. at 23, 11 N.E.3d 1054. See Commonwealth v. Meneide, 89 Mass. App. Ct. 448, 451 n.4, 52 N.E.3d 167 (2016) ("The smell of ... unburnt marijuana, standing alone, no longer provides ... reasonable suspicion," much less "probable cause"). See also Commonwealth v. Villagran, 477 Mass. 711, 717, 81 N.E.3d 310 (2017). As the cases supra make clear, the circumstances underlying a determination of probable cause are fact- and situation-specific.
Here, in all of the circumstances set forth in the search warrant affidavit, there was probable cause that illegal cultivation of marijuana was taking place within the warehouse.
3. Conclusion. The search warrant affidavit established probable cause to search the warehouse for evidence of marijuana **816 cultivation. The matter is remanded to the District Court for further proceedings consistent with this opinion.
So ordered.

By comparison, a regulation National Basketball League (NBA) court measures ninety-four feet by fifty feet, or 4,700 square feet, less than one-half the size of the warehouse. See NBA Official Rulebook 2018-2019, Rule 1: Court Dimensions -- Equipment, https://official.nba.com/rule-no-1-court-dimensions-equipment [https://perma.cc/82DD-64PS].

"A report of a case for determination by an appellate court shall for all purposes under these rules be taken as the equivalent of a notice of appeal." Mass. R. A. P. 5, as amended, 378 Mass. 930 (1979).

In Commonwealth v. Canning, 471 Mass. 341, 343-344, 28 N.E.3d 1156 (2015), the officers had conducted a multiday surveillance of the property. During that time, an officer in a neighboring town informed these officers that the defendant and another man had been observed "purchasing 'a large amount of indoor [marijuana] grow materials' from a "hydroponic shop' ... and then loading the materials into an automobile registered to the defendant." Id. at 343, 28 N.E.3d 1156. Police also obtained utility bills for electrical service at the subject property and neighboring houses, covering the previous six months, and learned that the charges at the property in question averaged more than one hundred times the number of kilowatts used by neighboring houses. Id.